August 4, 2026

The Honorable J. Mark Coulson, Magistrate Judge
United States District Court for the District of Maryland
101 West Lombard Street
Baltimore, MD 21201

RE:    Case : *Trout, et al. v. Riggle, et al.*
         Civil No.:  1:25-cv-02797-JMC
         Discovery dispute concerning defense physical examination of Plaintiff

Dear Judge Coulson:

Despite conferring in good faith, the parties have arrived at impasse regarding the scope of the physical examination of Plaintiff Amy Trout to be conducted by David Bianchi, M.D., one of Defendants' expert witnesses in this case and Defendants therefore submit this issue to the Court for resolution.

By way of background, this is a medical negligence action. Plaintiffs allege that on October 11, 2023, Dr. Karl Riggle was negligent in the way he performed a total thyroidectomy on Amy Trout.  As a result, Plaintiffs allege, Ms. Trout had a bilateral recurrent laryngeal nerve injury and bilateral vocal cord paralysis resulting in the need for a tracheostomy. Ms. Trout has had a tracheostomy tube since February 2024. Plaintiffs further allege that due to the alleged negligence, Ms. Trout has suffered non-economic damages and economic damages, specifically future medical care relating to the tracheostomy, lost wages, and loss of future earning capacity.

Plaintiffs have designated Alexander Hillel, M.D. as an expert in this case. Dr. Hillel is an otolaryngologist who was Ms. Trout's treating physician before becoming involved as an expert. As a result, Dr. Hillel has had the opportunity to examine Ms. Trout on multiple occasions in the past with the most recent examination (as far as Defendants are aware) occurring in April 2025. Dr. Hillel's examinations included flexible videostroboscopy examinations of Ms. Trout's vocal cords and surrounding structures in February 2024,  March 2024, April 2024, June 2024, August 2024, January 2025, and April 2025.  A flexible videostroboscopy examination consists of "a flexible endoscope being passed through the nasal cavity… to view the vocal folds and surrounding anatomy at rest and while speaking. The scope is attached to a machine that contains a strobe light, which makes the vibrations of the vocal folds appear in slow motion."

August 4, 2026
Page 2 of 2


Defendants seek to have Ms. Trout examined by Dr. Bianchi, an otolaryngologist, to assess Ms. Trout's present condition, and most importantly, her bilateral recurrent laryngeal nerve injury at issue in this case. Plaintiffs object to a single aspect of the examination, specifically Dr. Bianchi's request to perform a flexible laryngoscopy during his examination of Ms. Trout. This test is performed in the same fashion as the procedure performed by Dr. Hillel with a flexible endoscope/laryngoscope being passed through the nasal cavity to examine the same anatomy examined by Dr. Hillel though it does not use strobe light. Both procedures require only a local topical anesthetic such as lidocaine to numb the nasal passages. No sedation or general anesthetic will be used.  The procedure is expected to last five minutes or less. This procedure is needed both to evaluate the findings made by Dr. Hillel and to determine whether there have been any changes since the time of the last examination in April 2025.  Such an evaluation would be used to assess airway compromise due to the reported injury to the recurrent laryngeal nerves and assess whether over time Ms. Trout's body has compensated to any degree for such an injury by using other muscles.

There is no basis to prevent Dr. Bianchi from performing this brief procedure, one no more invasive than the procedure performed on seven occasions by Dr. Hillel. Preventing Dr. Bianchi from doing so would undermine his ability to evaluate Ms. Trout's vocal cords in any meaningful fashion and therefore Defendants' ability to respond to the Plaintiffs' claims concerning the nature, extent, and prognosis for Plaintiffs' alleged injury in this case.

Prior to submitting this issue to the Court, the parties communicated regarding the examination by Dr. Bianchi. While other issues regarding the examination were resolved, the parties could not reach agreement on the issue now submitted to the Court. Specifically, counsel exchanged emails regarding the examination on July 6, 7, 8, and 21. Matt Fogelson of my office and Clare Hatchen from Malone and Associates spoke by phone on July 22 concerning the examination and, specifically, the issue regarding the laryngoscopy.


Sincerely,


/s/ Frederick W. Goundry, III
Frederick W. Goundry, III