**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

August 13, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:     _Trout, et al v. Riggle, et al._
        Civil No. 1:25-cv-02797-JMC

Dear Counsel:

Plaintiffs Amy and Timothy Trout brought the instant action against Defendants Karl P. Riggle, M.D. and Tristate Surgeons, LLC alleging a medical malpractice claim (ECF No. 1). Currently before the Court is a dispute concerning the scope of an upcoming Independent Medical Examination, to be conducted by David Bianchi, M.D. (ECF Nos. 32, 33, 35, 36). Defendants seek to have Mrs. Trout examined by Dr. Bianchi by way of a flexible laryngoscopy. Plaintiffs object to this aspect of the upcoming medical examination.

The issues have been fully briefed, and no hearing is necessary. _See_ Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, Defendant's requested relief is GRANTED.

## I.      Background

The instant case arises from injuries Plaintiff suffered, which are the alleged result of the Defendants' negligence. (ECF No. 1 at 1).[1] On September 11, 2023, Plaintiff saw Dr. Riggle "for a consultation about her thyroid gland." _Id._ at 2. On October 11, 2023, Dr. Riggle performed a total thyroidectomy on Plaintiff. _Id._ at 3. After surgery, Plaintiff asserts she "experienced respiratory distress with stridor – a high-pitched, whistling sound made during breathing that is usually caused by a narrowing or obstruction in the upper airway." _Id._ at 4. "Approximately three hours later, Dr. Riggle ordered reintubation of Mrs. Trout to address 'increased stridor.' The anesthesia team reintubated Mrs. Trout "without incident." _Id._ Afterwards, Plaintiff "was extubated two days later, on October 13, 2023. She remained in the intensive care unit (ICU) at Meritus and continued to have intermittent stridor, difficulty swallowing and a weak voice." _Id._

Plaintiff was discharged on October 20, 2023. _Id._ at 5. "She continued to experience difficulty breathing which made it hard for her to sleep." _Id._ After obtaining a second opinion from Dr. Alexander Hillel, M.D., "Dr. Hillel noted that her bilateral vocal cords had no abduction or adduction and urged Mrs. Trout to have a tracheostomy as soon as possible to secure her airway." _Id._ "On February 9, 2024, Mrs. Trout underwent a tracheostomy at Johns Hopkins Hospital. The procedure involved creating an opening in Mrs. Trout's neck and inserting a tracheostomy tube into the opening." _Id._ Plaintiff avers "her vocal cord paralysis is likely permanent." _Id._

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

1

The parties represent that Plaintiffs have designated Dr. Alexander Hillel, M.D. as an expert witness.  (ECF No. 35 at 1).  Dr. Hillel "is an otolaryngologist who was Ms. Trout's treating physician before becoming involved as an expert."  Dr. Hillel's examination included flexible videostroboscopy examinations of Ms. Trout's vocal cords and surrounding structures in February 2024, March 2024, April 2024, June 2024, August 2024, January 2025, and April 2025. *Id.* Defendants now seek to have Ms. Trout re-examined by the same procedure, this time by their expert, Dr. Bianchi.  *Id.*

A flexible videostroboscopy examination consists of passing a flexible endoscope through the nasal cavity to view the vocal folds and surrounding anatomy at rest and during speech.  *Id.* The scope is attached to a machine that contains a strobe light, which makes the vibrations of the vocal folds appear in slow motion.  The examination Dr. Bianchi would perform does not use the strobe light, whereas Dr. Hillel's did.

## II.    Analysis

Plaintiffs argue that this request seeks to "subject Mrs. Trout to an invasive medical procedure – running a tube through her nose and down the back of her throat to her paralyzed vocal cords – to double check that they remain paralyzed nearly three years after the total thyroidectomy performed by Dr. Riggle."  (ECF No. 36 at 1).  Defendants argue that "[t]his procedure is needed both to evaluate the findings made by Dr. Hillel and to determine whether there have been any changes since the time of the last examination in April 2025. Such an evaluation would be used to assess airway compromise due to the reported injury to the recurrent laryngeal nerves and assess whether over time Ms. Trout's body has compensated to any degree for such an injury by using other muscles."  (ECF No. 36 at 2).  Plaintiffs advocate for a non-invasive procedure, though they do not suggest a specific alternative.  *Id.*

Federal Rule of Civil Procedure 35 authorizes a court to order a medical examination of a party only if the party's condition is "in controversy" and there is "good cause shown." Fed. R. Civ. P. 35(a). These requirements "are not met ... by mere relevance to the case." *Schlagenhauf v. Holder,* 379 U.S. 104, 118 (1964). Ultimately, the presence of a medical condition that is "in controversy" and "good cause shown" are the "dual requirements" that must be satisfied for the Court to compel a mental evaluation under Rule 35. *Shipley v. Disney*, SAG-21-3173, 2024 WL 128778, at *1 (D. Md. Jan. 11, 2024).  Here, the first is undisputed. "At bottom, analysis of both...balance[s] the need for an examination against the burdens it imposes." *Nicholson v. Baltimore Police Dep't*, DKC-20-3146, 2022 WL 1104575, at *2 (D. Md. Apr. 13, 2022).

"[B]y adding the words 'good cause,' the Rules indicate that there must be greater showing of need under Rule...35 than under the other discovery rules." *Schlagenhauf*, 379 U.S. at 118. (cleaned up) (internal citation and quotation marks omitted). "Rule 35 imposes those heightened requirements 'given the potentially serious invasion of privacy called for by a mental or physical examination.'" *Shipley,* 2024 WL 128778, at *1 (quoting *Rich v. Diana Consulting Servs. LLC*, SAG-21-1670, 2022 WL 1289663, at *3 (D. Md. Apr. 29, 2022)). Moreover, the movant must affirmatively demonstrate good cause. *Id.* at 117. And, it is a "rather high hurdle[.]" *Mark Levy v. Howard Cty., Maryland,* CDA-24-3580, 2025 WL 3223762, at *2 (D. Md. Nov. 19, 2025). "Whether good cause exists generally turns on whether 'the average lay person would have difficulty evaluating the nature, extent, and cause of the claimant's injuries.'" *Shipley,* 2024 WL 128778, at *2 (quoting *Jones v. Campbell Univ., Inc.*, BO-20-29, 2020 WL 4451173, at *4

(E.D.N.C. Aug. 3, 2020)). Finally, "[d]etermining the propriety of a court-ordered mental examination is an 'intensely fact–specific' enterprise." *Shipley,* 2024 WL 128778, at *2 (quoting 8B Charles A. Wright, *et al.*, Federal Practice and Procedure § 2234.1 (3d ed.)). Indeed, the Rule 35 analysis "eludes simple encapsulation." *Shipley,* 2024 WL 128778, at *3.

To that end, Plaintiffs argue that the procedure is far more invasive than probative because Plaintiff has no doctor-patient relationship with Dr. Bianchi, and the procedure would take place under adversarial circumstances. (ECF No. 36 at 3). Defendants urge that there is no basis to prevent Dr. Bianchi from performing the procedure because it is brief, it is no more invasive than the procedure performed "on seven occasions by Dr. Hillel," and preventing Dr. Bianchi from doing so would "so would undermine his ability to evaluate Ms. Trout's vocal cords in any meaningful fashion." Defendants emphasize that the procedure requires only a topical anesthetic such as lidocaine to numb the nasal passages, and the procedure will last around five minutes or less. (ECF No. 35 at 2).

The Court agrees with Defendants. Although Plaintiffs argue that the adversarial circumstances defeat a showing of good cause, the Court observes that such reasoning could preclude any medical examination; here, Plaintiffs initiated the adversarial process by filing suit, and as a result, any medical examination would take place under adversarial circumstances. Plaintiffs have not challenged that an examination should take place, nor have they disputed that Dr. Bianchi should perform it. Similarly, although they argue that Defendants have not proposed a non-invasive procedure, neither have Plaintiffs, and the Court cannot conceive of any less invasive medical examination that would allow Defendants to consider the condition of Mrs. Trout's vocal cords.

## III.    Conclusion

For the foregoing reasons, the Court will GRANT the request to compel an independent medical examination, which shall include the disputed flexible laryngoscopy.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

3